```
             UNITED STATES DISTRICT COURT
                DISTRICT OF MINNESOTA
              Civil No.: 17-105 (DSD/ECW)
```

Claire Jean Lee,

      Plaintiff,

v.                                                    **ORDER**

Fairview Health Services; and
Fairview Southdale Hospital,

      Defendants.


    Claire Jean Lee, 10101 Lyndale Avenue South, Apartment 219, Bloomington, MN 55420, plaintiff pro se.

    Jennifer M. Waterworth, Esq. Gislason & Hunter, LLP, 701 Xenia Avenue South, Suite 500, Minneapolis, MN 55416, counsel for defendants.

This matter is before the court upon the motion for summary judgment by defendants Fairview Health Services and Fairview Southdale Hospital (collectively Fairview). Based on a review of the file, record, and proceedings herein, and for the following reasons, the court grants the motion.

**BACKGROUND**

This disability dispute arises out of pro se plaintiff Claire Jee Lee's treatment at the Fairview emergency room (ER) on January 10-11, 2015.[1]

---

[1] Lee had been treated at the Fairview ER before this visit as well. Am. Compl. ¶ 7.

Lee suffers from schizoaffective disorder - bipolar type, panic disorder, obsessive compulsive disorder, generalized anxiety disorder, and a hearing impairment. Am. Compl. ¶ 3. On January 10, 2015, at 10:31 p.m., Lee went to the Fairview ER complaining of abdominal pain. Waterworth Aff. Ex. 1. Lee was examined by Dr. Todd Joing. Id. Dr. Joing ordered lab testing, which showed no abnormalities requiring immediate treatment. Id. Dr. Joing explained the results to Lee, and referred her to Fairview gastroenterologist Dr. Cynthia Sherman for follow-up treatment and provided her with medication instructions. Id.

Lee then asked to speak with a licensed social worker regarding her fear of taking medications. Id. At 2:00 a.m., on January 11, Jane Hansen, MSW, LICSW, arrived to speak with Lee. Id. Lee told Hansen that the last time she was treated at the Fairview ER, it took fifty-three minutes before she was triaged. Id. Lee also stated that during her last visit, three Fariview nurses made up a story that she refused to leave, and she was still upset with how she was treated. Id.

Hansen told Lee that she could bring her concerns regarding her last visit to the Fairview patient experience representative or the nursing supervisor. Id. Hansen also informed Lee that she could assist Lee with any mental health concerns she may have. Id. Lee then became upset and raised her voice. Id. The interview ended shortly thereafter. Id.

At 2:25 a.m., Lee was seen by Nurse Tia Scholla. Id. Lee told Scholla that she wanted to talk with a licensed social worker regarding her fear of taking antibiotics and about her father's recent death. Id.

At 3:35 a.m., Hansen returned to examine Lee and asked her if she would like an assessment. Id. Lee refused because she was not satisfied with her previous interaction with Hansen. Lee Dep. at 101:8-18. Lee stated that she preferred waiting until 8:00 a.m. to see another social worker and asked to stay overnight. Waterworth Aff. Ex. 1.

Dr. Joing concluded that Lee did not meet the criteria for a behavioral health hold, and officially discharged her at 4:12 a.m. Id. Lee was advised that she could return to Fairview for re-evaluation as needed. Id.

At 5:28 a.m., Lee returned to the Fairview ER triage desk and asked to speak with Scholla. Id. Lee asked Scholla why she had printed her discharge paperwork prior to her speaking with Hansen. Id. Lee stated that the time on her discharge paperwork was evidence that Fairview intended to discharge her before she spoke with Hansen. Id. Lee also complained that Hansen did not properly evaluate her. Id. Scholla told Lee that Fairview did not discharge her without properly evaluating her needs. Id. Scholla also assured Lee that had she met the appropriate criteria for further treatment, her discharge paperwork would have been

shredded, and her providers would have continued with an appropriate plan of care.[2]  Id.  Lee spent the remainder of the morning in the Fairview ER waiting room.  Id.

At 7:49 a.m., Lee was re-admitted to the Fairview ER.  Id. She stated that she was there to have a psychiatric evaluation and for abdominal pain.  Id.  Lee asked to review her medical records and to use the phone to raise a complaint about her medical treatment.  Id.  Lee stated that she needed to use the phone so she could contact Joanna Roberson, a former Fairview employee.  Id. Eventually, Lee's phone was removed from the room by Fairview staff because Lee made repeated calls to the Fairview psychiatric department.  Id.  Lee stated that she made the calls to Roberson because she was concerned that Fairview staff would call the police.[3]  Lee Dep. at 106:6-107:5.

Lee was then re-examined by Dr. Randall Steinman.  Waterworth Aff. Ex. 1.  Dr. Steinman noted that Lee was discharged that morning with improvement in her symptoms and was referred to Fairview gastroenterology for follow-up treatment.  Id.  Dr. Steinman also concluded that Lee's lab work that morning was unremarkable except for slightly elevated creatinine.  Id.  Dr. Steinman further noted that Lee had three negative abdominal

---

[2]  Lee admitted that she has no firsthand knowledge that Scholla's explanation was untrue.  Lee Dep. at 99:22-100:4.

[3]  Fairview did not call the police.  Lee Dep. at 104:18-23.

4

ultrasounds in the last year and a negative pelvis ultrasound. Id. Dr. Steinman concluded that Lee did not have symptoms requiring surgical intervention. Id.

Dr. Steinman told Lee that she should try carafate and follow-up with the gastroenterologist. Id. Lee declined a second social worker exam, and asked to speak with the nursing supervisor. Lee Dep. at 115:20-116:12.

The nursing supervisor briefly talked with Lee and advised her that Dr. Steinman was discharging her. Waterworth Aff. Ex. 1. The nursing supervisor instructed Lee to schedule an appointment with Fairview gastroenterology. Id. Lee was discharged at 9:12 a.m. Id. Her discharge diagnoses were epigastric pain, schizoaffective disorder, unspecified condition, renal insufficiency, and chronic abdominal pain. Id. Lee was escorted to the Fairview patient parking area by security. Id.

Lee commenced this action on January 10, 2017. On June 6, 2017, Lee filed an amended complaint alleging violations of Title III of the Americans with Disabilities Act (ADA), the Rehabilitation Act of 1973, the Emergency Medical Treatment and Active Labor Act (EMTALA), the Minnesota Government Data Practices Act (MGDPA), and for intentional infliction of emotional distress (IIED). Lee seeks a declaratory judgment, injunctive relief, and compensatory damages. Fairview now moves for summary judgment. Lee did not file a response to the instant motion nor did she

5

attend the hearing.[4]

**DISCUSSION**

**I.   Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient ....").

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. Id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists - or cannot exist - about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a

---

[4]   Lee was given an enlargement of time to file a response. ECF No. 153.

plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

Even where, as here, a motion for summary judgment is unopposed, the court still must determine that the moving party is entitled to judgment as a matter of law. Interstate Power Co. v. Kansas City Power & Light Co., 992 F.2d 804, 807 (8th Cir. 1993). It is nonmovant's responsibility, however, to "set forth specific facts showing that there is a genuine issue for trial." Stroeder v. Smith, No. 10-4115, 2013 WL 354112, at *3 (D. Minn. Jan. 3, 2013)(citation omitted) report and recommendation adopted, No. 10-4115, 2013 WL 354203 (D. Minn. Jan. 29, 2013). The court is not required to "scour the record to determine whether there are issues of fact that preclude summary judgment." Id.; see also Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs., 558 F.3d 731, 735 (8th Cir. 2009) (stating that where summary judgment was unopposed, "[i]t was not the District Court's responsibility to sift through the record to see if, perhaps, there was an issue of fact.").

**II. ADA and Rehabilitation Act**

Lee claims that Fairview retaliated against her and failed to reasonably accommodate her disability in violation of the ADA and the Rehabilitation Act. The court disagrees.

Title III of the "ADA proscribes discrimination in places of

plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

Even where, as here, a motion for summary judgment is unopposed, the court still must determine that the moving party is entitled to judgment as a matter of law. Interstate Power Co. v. Kansas City Power & Light Co., 992 F.2d 804, 807 (8th Cir. 1993). It is nonmovant's responsibility, however, to "set forth specific facts showing that there is a genuine issue for trial." Stroeder v. Smith, No. 10-4115, 2013 WL 354112, at *3 (D. Minn. Jan. 3, 2013)(citation omitted) report and recommendation adopted, No. 10-4115, 2013 WL 354203 (D. Minn. Jan. 29, 2013). The court is not required to "scour the record to determine whether there are issues of fact that preclude summary judgment." Id.; see also Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs., 558 F.3d 731, 735 (8th Cir. 2009) (stating that where summary judgment was unopposed, "[i]t was not the District Court's responsibility to sift through the record to see if, perhaps, there was an issue of fact.").

**II. ADA and Rehabilitation Act**

Lee claims that Fairview retaliated against her and failed to reasonably accommodate her disability in violation of the ADA and the Rehabilitation Act. The court disagrees.

Title III of the "ADA proscribes discrimination in places of

public accommodation against persons with disabilities." Stenger v. Franco, 228 F.3d 889, 892 (8th Cir. 2000). The Rehabilitation Act provides that no "otherwise qualified individual with a disability in the United States ... shall, solely by reason of [her] disability, be excluded from the participation in, be denied benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a).

Lee must show that Fairview "was deliberately indifferent to the rights secured to her by the ADA and Rehabilitation Act in order to recover compensatory damages." Meagley v. City of Little Rock, 639 F.3d 384, 389 (8th Cir. 2011). "In the absence of direct evidence of discrimination [the court] analyze[s] discrimination and retaliation claims" under the ADA and the Rehabilitation Act pursuant to the "burden-shifting framework announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Mershon v. St. Louis Univ., 442 F.3d 1069, 1074 (8th Cir. 2006). "[C]laims for failure to accommodate are analyzed under a modified burden-shifting analysis, because a discriminatory intent is not an issue." Id.

"To establish a prima facie case ... a plaintiff must demonstrate (1) that [she] engaged in a statutorily protected activity, (2) that an adverse action was taken against [her], and (3) a causal connection between the adverse action and the protected activity." Id. (internal citation omitted). "If this

prima facie showing is made, the burden then shifts to the defendant to proffer a legitimate nondiscriminatory reason for the adverse action." Id. "The burden of production then shifts back to the plaintiff to show that the defendant's reason is a pretext for discrimination." Id. (internal citation omitted). A plaintiff "at all times retains the burden of persuading the trier of fact that [s]he has been the victim of illegal discrimination due to [her] disability." Fenney v. Dakota, Minn. & E. R. Co., 327 F.3d 707, 712 (8th Cir. 2003).

Lee has not established a prima facie case because she has not shown that she suffered any adverse action. The record shows that she was twice treated at the Fairview ER within hours and discharged with follow-up instructions only after the treating physicians conducted lab testing, reviewed her medical history, examined her physically, and provided medication instructions. In addition, Lee was provided several opportunities to talk with a licensed Fairview social worker. The record does not show that Lee was provided care or treatment inconsistent with other similarly situated patients. Indeed, Lee offers no evidence that she made any specific requests for accommodation or that those requests were denied. Lee has not shown that Fairview either retaliated against her or failed to accommodate her disability in violation of the ADA and Rehabilitation Act. As a result, Fairview is entitled to judgment as a matter of law on these claims.

**II. EMTALA**

Lee claims that Fairview violated EMTALA. The court disagrees.

EMTALA requires that health care provides medically screen and stabilize patients seeking emergency treatment. 42 U.S.C. § 1395dd(a)-(b). "EMTALA imposes only a limited duty on hospitals with emergency rooms. It is not a substitute for state-law malpractice actions. It does not guarantee proper diagnosis or provide a federal remedy for medical negligence." Summers v. Baptist Med. Cen. Arkadelphia, 91 F.3d 1132, 1136 (8th Cir. 1996). "[T]he purpose of the statute was to address a distinct and rather narrow problem—the dumping of uninsured, underinsured, or indigent patients by hospitals who did not want to treat them." Id. "A patient is dumped when he or she is shunted off by one hospital to another, the second one being, for example, a so-called charity institution." Id. Accordingly, "[p]atients are entitled under EMTALA ... to be treated as other similarly situated patients are treated, within the hospital's capabilities. It is up to the hospital itself to determine what its screening procedures will be." Id.

Lee has not established that Fairview failed to provide her with a proper screening. In fact, the record shows that Fairview: admitted her as an emergency patient on two occasions, within hours; conducted two physical examinations; ordered lab testing,

which the treating physicians concluded were unremarkable; reviewed her medical history; and provided her with instructions regarding recommended medications. Fairview also provided a licensed social worker when requested by Lee. Further, to the extent Lee's health required stabilization or a stabilization assessment, the record does not show that Fairview failed to do so. Rather, Dr. Steinman concluded that Lee's symptoms had improved since her arrival to the ER and that no emergency treatment was medically necessary.

And again, Lee offers no evidence that she was treated differently than other similarly situated patients or that Fairview breached any protocols in treating her. As a result, Lee's EMTALA claim also fails.

### III. MGDPA

MGDPA "regulates the collection, creation, storage, maintenance, dissemination, and access to government data in government entities." Minn. Stat. § 13.01, subdiv. 3. Under "MGDPA, all government data collected, created, received, maintained or disseminated by a government entity shall be public unless classified by statute, or temporary classification pursuant to section 13.06, or federal law, as nonpublic or protected nonpublic, or with respect to data on individuals, as private or confidential." Minn. Joint Underwriting Ass'n v. Star Tribune Media Co., LLC., 862 N.W.2d 62, 65 (Minn. 2015). "MGDPA defines government entity as a state agency, statewide system, or political

subdivision.  In turn, state agency is defined as the state, the University of Minnesota, and any office, officer, department, division, bureau, board, commission, authority, district or agency of the state." Id. (internal citations omitted).

Lee offers no evidence that Fairview is a state agency, statewide system, or political subdivision under MGDPA. As such, Fairview is not a government entity under the statute. Fairview's participation in the Medicaid and Medicare programs does not affect that conclusion. See, e.g., Alexander v. Pathfinder, 189 F.3d 735, 740 (8th Cir. 1999 (holding that private corporations' acceptance of "Medicaid funds does not convert [them] into a state actor."). As a result, Lee's MGDPA claims fails.

## IV. IIED

"To sustain a claim of IIED, the alleged behavior must be so extreme as to be 'utterly intolerable to a civilized community' or 'so severe that no reasonable person can be expected to endure it.'" Onyiah v. St. Cloud State Univ., 665 F. Supp. 2d 948, 970-71 (D. Minn. 2009) (quoting Strauss v. Thorne, 490 N.W.2d 908, 913 (Minn. Ct. App. 1992) (citing Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 438-39 (Minn. 1983)). "Liability for IIED does not extend to insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Id. (internal quotation omitted).

Fairview's conduct falls far short of this standard. Fairview

twice medically treated Lee and permitted her to spend the entire night and morning in its lobby, without incident.  In addition, Lee was permitted to use the phone when admitted and given access to licensed Fairview social workers.  Though Lee appears to be dissatisfied with her experience at Fairview, she offers no evidence that she suffered a severe or egregious indignity or that Fairview's conduct was utterly intolerable.  As a result, Lee's IIED claim fails.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. The motion for summary judgment [ECF No. 122] is granted; and

2. The case is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 12, 2019

s/David S. Doty  
David S. Doty, Judge  
United States District Court